UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
FORT MYERS DIVISION

SUSAN BRYANT,

       Plaintiff,

v.                               Case No. 2:20-cv-294-JLB-NPM

COMMISSIONER OF SOCIAL
SECURITY,

       Defendant.

_____

## CORRECTED REPORT AND RECOMMENDATION[1]

     Susan Bryant seeks judicial review of a denial of Social Security disability insurance and supplemental security income benefits. The Commissioner of the Social Security Administration filed the transcript[2] of the proceedings, and the parties filed a Joint Memorandum (Doc. 25). As discussed in this report, the decision of the Commissioner should be affirmed in part and reversed in part.

## I.   Eligibility for Disability Benefits and the ALJ's Decision

### A.   Eligibility

     The law defines disability as the inability to do any substantial gainful activity

---

[1]  This corrected report and recommendation incorporates the applicable standard of review, which was inadvertently omitted from the July 28, 2021 report and recommendation (Doc. 27).

[2]  Cited as "Tr." followed by the appropriate page number.

by reason of any medically determinable physical or mental impairment that can be expected to result in death or that has lasted or can be expected to last for a continuous period of not less than twelve months.[3]  The impairment must be severe, making the claimant unable to do her previous work or any other substantial gainful activity that exists in the national economy.[4]

## B.    Factual and procedural history

Bryant was fifty-five years old, has at least a high school education, and last worked as a corrections officer. (Tr. 32). On June 22, 2016, she applied for disability insurance benefits ("DIB") and on June 24, 2016, she applied for supplemental security income ("SSI"). (Tr. 91, 92, 196-208). Bryant asserted an onset date of September 1, 2009. (Tr. 196). Her applications were administratively denied initially on August 26, 2016, and upon reconsideration on January 10, 2017. (Tr. 91, 92, 116, 117).

At Bryant's request, Administrative Law Judge Matthew G. Levin ("ALJ") held hearings on January 24 and April 26, 2019, concerning the denial of benefits. (Tr. 40-68). The ALJ issued a decision on May 23, 2019, finding Bryant not disabled from the alleged onset date through the date of decision. (Tr. 17-34).

On March 5, 2020, the administration's Appeals Council denied Bryant's

---

[3]  *See* 42 U.S.C. §§ 416(i), 423(d)(1)(A), 1382c(a)(3)(A); 20 C.F.R. §§ 404.1505, 416.905.

[4]  *See* 42 U.S.C. §§ 423(d)(2), 1382c(a)(3); 20 C.F.R. §§ 404.1505-404.1511, 416.905-416.911.

request for review. (Tr. 1-5). Bryant then filed a Complaint on April 22, 2020, and the case is ripe for review.

### C.    The ALJ's decision

An ALJ must perform a five-step sequential evaluation to determine if a claimant is disabled. 20 C.F.R. §§ 404.1520(a)(1); 416.920(a)(1). This five-step process determines:

> (1) whether the claimant is engaged in substantial gainful activity; (2) if not, whether the claimant has a severe impairment or combination of impairments; (3) if so, whether these impairments meet or equal an impairment listed in the Listing of Impairments; (4) if not, whether the claimant has the residual functional capacity ("RFC") to perform [her] past relevant work; and (5) if not, whether, in light of [her] age, education, and work experience, the claimant can perform other work that exists in significant numbers in the national economy.

*Atha v. Comm'r, Soc. Sec. Admin.*, 616 F. App'x. 931, 933 (11th Cir. 2015) (internal quotation omitted); *see also* 20 C.F.R. §§ 404.1520(a)(4), 416.920(a)(4).

The governing regulations provide that the Social Security Administration conducts this "administrative review process in an informal, non-adversarial manner." 20 C.F.R. §§ 404.900(b), 416.1400(b). Unlike judicial proceedings, the administration's hearings "are inquisitorial rather than adversarial." *Washington v. Comm'r of Soc. Sec.*, 906 F.3d 1353, 1364 (11th Cir. 2018) (quoting *Sims v. Apfel*, 530 U.S. 103, 111, (2000) (plurality opinion)). "Because Social Security hearings basically are inquisitorial in nature, '[i]t is the ALJ's duty to investigate the facts and

develop the arguments both for and against granting benefits.'" *Id*. Indeed, "at the hearing stage, the Commissioner does not have a representative that appears 'before the ALJ to oppose the claim for benefits.'" *Id*. (quoting *Crawford & Co. v. Apfel*, 235 F.3d 1298, 1304 (11th Cir. 2000)). "Thus, 'the ALJ has a basic duty to develop a full and fair record. This is an onerous task, as the ALJ must scrupulously and conscientiously probe into, inquire of, and explore for all relevant facts.'" *Id*. (quoting *Henry v. Comm'r of Soc. Sec.*, 802 F.3d 1264, 1267 (11th Cir. 2015)).

Nonetheless, while the claimant is temporarily relieved of the burden of production during step five as to whether there are enough jobs the claimant can perform, the claimant otherwise has the burdens of production and persuasion throughout the process. *Id*. at 1359; *see also* 20 C.F.R. §§ 404.1512, 416.912 (providing that the claimant must prove disability); *Bloodsworth v. Heckler*, 703 F.2d 1233, 1240 (11th Cir. 1983) ("The scheme of the Act places a very heavy initial burden on the claimant to establish existence of a disability by proving that he is unable to perform his previous work."); *Doughty v. Apfel*, 245 F.3d 1274, 1280 (11th Cir. 2001) ("[T]he overall burden of demonstrating the existence of a disability as defined by the Social Security Act unquestionably rests with the claimant.").

In this matter, the ALJ found Bryant last met the insured status requirements through June 30, 2015. At step one of the evaluation, the ALJ found Bryant had not engaged in substantial gainful activity since the alleged onset date. (Tr. 20). Bryant

applied for both DIB and SSI benefits. For DIB, Bryant must prove she was disabled before her date last insured, June 30, 2015. *Castle v. Colvin*, 557 F. App'x 849, 853 (11th Cir. 2014). SSI benefits do not have this limitation. As a result, the ALJ separated his findings for each type of application when appropriate to do so and the Court will follow suit.

At step two, with respect to DIB, the ALJ characterized Bryant's severe impairments as: "chronic obstructive pulmonary disease, hypertension and peripheral neuropathy." (Tr. 20). As to SSI, the ALJ characterized Bryant's severe impairments as: "chronic obstructive pulmonary disease, hypertension and peripheral neuropathy and vascular disease." (Tr. 20).

At step three, the ALJ determined Bryant did not have an impairment or combination of impairments that met or medically equaled the severity of an agency-listed impairment. (Tr. 23).

As a predicate to step four for DIB, the ALJ arrived at the following RFC:

> Through the date last insured on June 30, 2015, after careful consideration of the entire record, the undersigned finds that the claimant has the residual functional capacity to perform medium work as defined in 20 [C.F.R. §] 404.1567(c) except she must avoid exposure to dust, gases, odors fumes and poor ventilation.

(Tr. 23).

For SSI, the ALJ arrived at the following RFC:

> From the filing date of the Title XVI application on June 24, 2016 through the date of this decision, after careful

> consideration of the entire record, the undersigned finds that the claimant has the residual functional capacity to perform light work as defined in 20 [C.F.R. §] 416.967 (b) except she can occasionally climb, ropes, ladders and scaffolds and frequently climb ramps and stairs and she must avoid exposure to dust, gases, odors fumes and poor ventilation.

(Tr. 27).

Consequently, for DIB, the ALJ found Bryant capable through the date last insured of performing her past relevant work as a corrections officer as generally performed. (Tr. 32). The ALJ determined that this work does not require the performance of work-related activities precluded by Bryant's RFC. (Tr. 32).

With respect to SSI, the ALJ determined Bryant was not capable of performing her past relevant work, finding the job demands exceeded Bryant's RFC. (Tr. 32). At step five, the ALJ found Bryant could perform other jobs that existed in significant numbers in the national economy. In support, the vocational expert identified three representative occupations an individual with Bryant's age (50 on the application date), education (at least high school), work history, and RFC could perform:

(1)    Cashier, DOT 211.462-010;

(2)    Merchandise Marker, DOT 209.587-034; and

(3)    Security Guard, DOT 372.667-034.

(Tr. 33).[5]  The ALJ found Bryant not disabled from September 1, 2009, through the date of the decision. (Tr. 33).

## II.    Analysis

Bryant's appeal presents the following issues:

(1)    Whether the ALJ erred at step two in failing to find additional severe impairments and in failing to include additional limitations in the RFC and hypothetical questions posed to the vocational expert.

(2)    Whether substantial evidence supports the ALJ's findings that Bryant could perform medium and light work.

(3)    Whether the ALJ erred in posing a hypothetical question to the vocational expert regarding environmental irritants.

(4)    Whether substantial evidence supports the ALJ's finding that jobs exist in significant numbers in the national economy that Bryant is capable of performing.

(Doc. 25, pp. 29-75).

### A.    Standard of review

The Court "may not decide the facts anew, make credibility determinations, or reweigh the evidence." *Buckwalter v. Acting Comm'r of Soc. Sec.*, 997 F.3d 1127, 1132 (11th Cir. 2021). While the court must view the evidence as a whole, *Foote v.*

---

[5] The DOT numbers refer to the Dictionary of Occupational Titles and its detailed explanations concerning each occupation's requirements. These descriptions include exertion and skill levels. Exertion refers to the work, in a purely physical sense, that the job requires, and it is divided into five categories: sedentary, light, medium, heavy, and very heavy. Skill refers to how long it takes to learn the job, and it is divided into three categories: unskilled, semiskilled and skilled, with the "SVP" (Specific Vocational Preparation) providing further subdivision of the three skill categories into nine levels: SVP 1 and 2 are unskilled, SVP 3 and 4 are semiskilled, and SVP 5 through 9 are skilled.

*Chater*, 67 F.3d 1553, 1560 (11th Cir. 1995), the court's review of the administration's decision is limited to determining whether "it is supported by substantial evidence and based on proper legal standards." *Crawford v. Comm'r of Soc. Sec.*, 363 F.3d 1155, 1158 (11th Cir. 2004). "Substantial evidence is more than a scintilla and is such relevant evidence as a reasonable person would accept as adequate to support a conclusion." *Goode v. Comm'r of Soc. Sec.*, 966 F.3d 1277, 1280 (11th Cir. 2020) (quoting *Crawford*, 363 F.3d at 1158).

"[T]he threshold for such evidentiary sufficiency is not high." *Biestek v. Berryhill*, 139 S. Ct. 1148, 1154 (2019). The inquiry is "case-by-case," and "defers to the presiding ALJ, who has seen the hearing up close." *Id*. at 1157. If supported by substantial evidence, the ALJ's findings of fact are conclusive. 42 U.S.C. § 405(g). This means the district court will affirm, even if the court would have reached a contrary result as finder of fact, and even if the court finds that the evidence "preponderates against" the agency's decision. *Noble v. Comm'r of Soc. Sec.*, 963 F.3d 1317, 1323 (11th Cir. 2020) (quoting *Barnes v. Sullivan*, 932 F.2d 1356, 1358 (11th Cir. 1991)).

## B. Whether the ALJ erred in failing to find additional severe impairments and in failing to include additional limitations in the RFC and hypothetical questions posed to the vocational expert

Bryant argues the ALJ erred in failing to find her upper extremity impairments, fibromyalgia, obesity or morbid obesity, and mental impairments

severe. And she argues the ALJ compounded this error by not including relevant limitations for these allegedly severe impairments in the RFC and in the hypothetical questions to the vocational expert.

At step two, an ALJ considers the severity of a claimant's impairments. 20 C.F.R. §§ 404.1520(a)(4)(ii), 416.920(a)(4)(ii). An impairment or combination of impairments is not severe "if it does not significantly limit [a claimant's] physical or mental ability to do basic work activities" 20 C.F.R. §§ 404.1522(a), 416.922(a). In other words, a severe impairment is something that *significantly* limits a claimant's abilities to perform basic work activities. *See* SSR 85-28, 1985 WL 56856, *4 n.1; 20 C.F.R. §§ 404.1520(c), 404.1522(a), 416.920(c), 416.922(a).

The severity of an impairment "must be measured in terms of its effect upon ability to work, and not simply in terms of deviation from purely medical standards of bodily perfection or normality." *McCruter v. Bowen*, 791 F.2d 1544, 1547 (11th Cir. 1986). The impairment must also last or be expected to last for a continuous period of at least 12 months. 20 C.F.R. §§ 404.1520(a)(4)(ii), 404.1509, 416.920(a)(4)(ii), 416.909. The claimant bears the burden at step two of proving that she has either singly or in combination, a severe impairment. *O'Bier v. Comm'r of Soc. Sec. Admin.*, 338 F. App'x 796, 798 (11th Cir. 2009).

This inquiry "acts as a filter in that the finding of any severe impairment ... is enough to satisfy the requirement of step two and allow the ALJ to proceed to step

three." *Ball v. Comm'r of Soc. Sec. Admin.*, 714 F. App'x 991, 993 (11th Cir. 2018) (internal quotations omitted). "Nothing requires that the ALJ must identify, at step two, all of the impairments that should be considered severe." *Heatly v. Comm'r of Soc. Sec.*, 382 F. App'x 823, 825 (11th Cir. 2010). If any impairment or combination of impairments qualifies as "severe," step two is satisfied and the claim advances to step three. *Gray v. Comm'r of Soc. Sec.*, 550 F. App'x 850, 852 (11th Cir. 2013) (citing *Jamison v. Bowen*, 814 F.2d 585, 588 (11th Cir. 1987)). "[B]eyond the second step, the ALJ must consider the entirety of the claimant's limitations, regardless of whether they are individually disabling." *Griffin v. Comm'r of Soc. Sec.*, 560 F. App'x 837, 841-42 (11th Cir. 2014) (internal citations omitted).

With this standard in mind, even if the ALJ should have found Bryant's extremity impairments, fibromyalgia, obesity or morbid obesity, and mental impairments severe, any error is harmless because the ALJ characterized other impairments as severe. As a result, the ALJ moved on to step three. *See Ball*, 714 F. App'x at 993. Thus, the issue becomes whether the ALJ erred in failing to include relevant additional limitations from these impairments in forming the RFC and resulting hypothetical questions to the vocational expert.

An individual's RFC is her ability to do physical and mental work activities on a sustained basis despite limitations secondary to her established impairments. *Delker v. Comm'r of Soc. Sec.*, 658 F. Supp. 2d 1340, 1364 (M.D. Fla. 2009). And

for the vocational expert's opinion to constitute substantial evidence, "the ALJ must pose a hypothetical question which comprises all of the claimant's impairments." *Winschel v. Comm'r of Soc. Sec.*, 631 F.3d 1176, 1180 (11th Cir. 2011) (citing *Wilson v. Barnhart*, 284 F.3d 1219, 1227 (11th Cir. 2002)). In determining a claimant's RFC, the ALJ must consider all relevant evidence. 20 C.F.R. §§ 404.1545(a), 416.945. But an ALJ is not required to include findings in either the RFC or hypothetical posed to the vocational expert that the ALJ found to be unsupported by the record. *Lee v. Comm'r of Soc. Sec.*, 448 F. App'x 952, 953 (11th Cir. 2011) (citing *Crawford v. Comm'r of Soc. Sec.*, 363 F.3d 1155, 1161 (11th Cir. 2004)).

### 1.    Disability insurance benefits

To prove her eligibility for DIB, Bryant had to prove she suffered from a disability between her alleged onset date of September 2009 and her date last insured of June 2015. *Mason v. Comm'r of Soc. Sec.*, 430 F. App'x 830, 831 (11th Cir. 2011) (citing *Moore v. Barnhart*, 405 F.3d 1208, 1211 (11th Cir. 2005)). If Bryant became disabled after her date last insured, her claim must be denied despite her disability. *Id.* During this time frame, the medical records are sparse.

As a frame of reference, in July 2013, Bryant completed a Pre-Employment Medical History Questionnaire. (Tr. 418-422). Bryant listed a job-related injury of gun ammunition blowing up in her hand, but later indicated she had no joint

swelling, stiffness, or pain. (Tr. 420). The only medical issue she listed was mild high blood pressure. (Tr. 418-422). Moreover, as the ALJ noted, after a medical examination on August 7, 2013, Glenn Toblas, D.O. found Bryant capable of performing the essential functions of a correctional officer. (Tr. 25, 411-412).

For upper extremity impairments, Bryant cites to a January 15, 2015 medical record by ARNP DeEtta DeBault,[6] who noted "[p]ain in the finger joints, stiffness of the finger joint(s), unable to straighten the fingers, hand pain, wrist joint pain, pain in the arms, and shoulder join pain." (Doc. 29, p. 30; Tr. 434). But Bryant fails to cite to any record during the relevant DIB time period that shows any upper-extremity work-related limitations. Generally, a claimant cannot prove disability by simply referencing subjective complaints. *Willyard v. Saul*, No. 8:19-cv-2537-TGW, 2020 WL 7074467, *4 (M.D. Fla. Dec. 3, 2020). Even a diagnosis is insufficient. *Id.* Further, the ALJ gave great weight to the opinion of Joseph Gaeta, M.D., an impartial medical expert, who is board-certified in internal medicine and cardiology. (Tr. 24, 26, 47). Dr. Gaeta reviewed the entire medical evidence of record. (Tr. 26). As the ALJ noted, Gaeta found that prior to the date last insured, Bryant's examinations were essentially normal and do not support Bryant's allegations. (Tr.

---

[6] Prior to a March 27, 2017 application date as is the case here, a nurse practitioner was not considered an "acceptable medical source" under the Social Security regulations and to the extent DeBault offered any opinion, her opinion is not entitled to substantial weight. *Stultz v. Comm'r of Soc. Sec.*, 628 F. App'x 665, 668 (11th Cir. 2015) (citing 20 C.F.R. § 416.913(a), (d), 416.927(a)(2)); *see also* 20 C.F.R. 404.1513(a) (2016).

26). The ALJ also gave great weight to Cyneetha Strong, M.D., a Social Security Administration medical consultant at the reconsideration level, who noted that during the DIB time period, a musculoskeletal exam showed no objective abnormalities of the upper extremities. (Tr. 26, 112). The Court finds substantial evidence supports the ALJ's RFC finding that contains no upper-extremity limitations.

As to fibromyalgia, Bryant cites to medical records after the date last insured. Specifically, the earliest medical record that mentions fibromyalgia is July 2016, over a year after the date last insured. (Tr. 471-472). *Bailey v. Soc. Sec. Admin., Comm'r*, 791 F. App'x 136, 143 (11th Cir. 2019) (affirming the Commissioner's decision denying disability benefits when all medical evidence related to fibromyalgia, including diagnosis and treatment, were dated after the date last insured). Because Bryant does not cite to any records establishing or even mentioning fibromyalgia during the relevant time period, substantial evidence supports the ALJ's RFC finding as to fibromyalgia.

For obesity, Bryant argues the ALJ found obesity to be a medically determinable impairment but failed to adequately evaluate this impairment in combination with her other impairments. (Doc. 25, p. 47). While the ALJ found obesity a medically determinable impairment, he also found that it would not cause more than minimal limitations in Bryant's ability to perform basic work activities

and was therefore non-severe. (Tr. 20). In her application, Bryant did not list obesity as a physical impairment that would limit her ability to work. (Tr. 226). And at the April 2019 hearing, Bryant never mentioned obesity as an impairment or having any limitations caused by it. (Tr. 40-62). In the joint memorandum, Bryant also failed to assert any additional limitations caused by obesity. (Doc. 25, pp. 45-47). The Eleventh Circuit has found that the failure to list an impairment in an application and the failure to testify at the hearing that a plaintiff suffered from this impairment to the extent that it would prevent her from working, could be sufficient to dispose of the claim. *Street v. Barnhart*, 133 F. App'x 621, 627 (11th Cir. 2005). Here, the ALJ considered obesity as a medically determinable impairment, but the burden is on Bryant to establish that her obesity results in functional limitations and that she is disabled under the Social Security Act. *See* 20 C.F.R. § 404.1512(a). Here, the ALJ properly considered obesity and substantial evidence supports his findings.

Finally, as to mental health impairments, Bryant mainly cites to records either before the alleged onset date or after the date last insured. (*See* Tr. 375-379 (before alleged onset date); 436, 494, 498, 648, 664, 670, 672, 761 (after date last insured)). In the relevant time period, Bryant cites to a January 15, 2015 medical record, which indicates a labile and depressed mood, but a normal appearance, affect, and thought content. (Tr. 456). She was assessed with overanxious disorder, Bipolar 1 disorder, depression, and insomnia due to stress, and prescribed medication for depression.

(Tr. 456). These sparse records do not indicate any work-related limitations based on these diagnoses during the relevant DIB time period. *See Willyard v. Saul*, No. 8:19-cv-2537-TGW, 2020 WL 7074467, *4 (M.D. Fla. Dec. 3, 2020). The ALJ properly considered the mental impairments and substantial evidence supports the decision.[7]

Thus, for DIB, the ALJ properly considered upper extremity impairments, fibromyalgia, obesity, and mental impairments when determining that these impairments were not severe, in deciding to omit additional limitations in the RFC based on these impairments, and in omitting any additional limitations in the hypothetical posed to the vocational expert. *See Lee v. Comm'r of Soc. Sec.*, 448 F. App'x 952, 953 (11th Cir. 2011) (citing *Crawford v. Comm'r of Soc. Sec.*, 363 F.3d 1155, 1161 (11th Cir. 2004)) (determining an ALJ is not required to include findings in the hypothetical that the ALJ found to be unsupported by the record). The ALJ's decision is supported by substantial evidence as to these issues.

### 2. Supplemental security income

For the purpose of determining SSI, the relevant adjudication period is the month in which Bryant filed her SSI application (June 2016) through the date of the

---

[7] Bryant also advances an argument that the ALJ should have retained a psychological consultant. The Court addresses this issue in the SSI discussion.

decision. *Quanstrom v. Colvin*, No. 6:13-cv-00120-PAZ, 2013 WL 12160998, *3 (M.D. Fla. Nov. 26, 2013) (citing 20 C.F.R. §§ 416.330, 416.335).

### a.    Fibromyalgia

Bryant argues that while the ALJ found fibromyalgia to be a medically determinable impairment, he erred by finding that fibromyalgia caused no more than minimal limitations in Bryant's ability to perform work related activities. (Doc. 25, p. 37). Bryant claims the ALJ ignored her associated symptoms and descriptions of her condition being constant, severe, and worsening in contravention of SSR 12-2p. (Doc. 25, p. 37). While the administration agrees that the SSR 12-2p framework applies, it argues that Bryant's fibromyalgia did not cause more than minimal effect on her ability to perform basic work activities. (Doc. 25, p. 41-42).

Fibromyalgia is "characterized primarily by widespread pain in the joints, muscles, tendons, or nearby soft tissue that has persisted for at least 3 months. SSR 12-2p, 2012 WL 3104869, *2 (July 25, 2012). The Eleventh Circuit has recognized that fibromyalgia is a unique impairment because it "'often lacks medical or laboratory signs and is generally diagnosed mostly on a[n] individual's described symptoms.'" *Horowitz v. Comm'r of Soc. Sec.*, 688 F. App'x 855, 863 (11th Cir. 2017) (quoting *Moore v. Barnhart*, 405 F.3d 1208, 1211 (11th Cir. 2005)). "Because the 'hallmark' of fibromyalgia is a 'lack of objective evidence,' a claimant's subjective complaints may be the only means of determining the severity of the

claimant's condition and the functional limitations she experiences." *Id.* (citing *Moore*, 405 F.3d at 1211). An ALJ's decision is subject to reversal when the ALJ relies on lack of objective findings as a basis for an adverse decision. *Id.*

The ALJ acknowledged that medical evidence of record and testimony documents a diagnosis for fibromyalgia with symptoms of back pain. (Tr. 21). The ALJ further supported his non-severe finding by relying on Gaeta's opinion that:

> the medical evidence documents benign objective clinical findings. [Gaeta] noted that the medical evidence of record did not document objective examination findings of any positive tender points per SSR 12-2p or treatment specific to address the symptoms of fibromyalgia. Dr. Gaeta noted all the musculoskeletal and neurological exams were normal, manifested by no back pain, normal ranges of motion, normal sensory and strength and no focal neurological deficits (Exhibit 7F-6). Treatment notes for complaints of fibromyalgia symptoms note no evidence of myalgia [muscle pain] or arthralgia [joint pain] symptoms (Exhibit l5F).

(Tr. 21). This excerpt in the step two portion of the decision is the extent to which the ALJ specifically mentioned fibromyalgia in the decision. The ALJ found Bryant's medically determinable impairments (including fibromyalgia) could reasonably be expected to cause the alleged symptoms, but her statements concerning the intensity, persistence and limiting effects of these symptoms are not entirely consistent with the medical evidence and other evidence in the record. (Tr. 27).

Gaeta testified he reviewed all the records in the case. (Tr. 47). He acknowledged Bryant was diagnosed with fibromyalgia. (Tr. 49, 52). He did not find

any medical reports of tender points to support a diagnosis of fibromyalgia. (Tr. 52). He also acknowledged that she may have fibromyalgia, but he testified that it would not change any of the limitations he found. (Tr. 52). "I mean the physical examination, the musculoskeletal examination and neurological examinations have been normal." (Tr. 52).

Medical records show Bryant has been diagnosed with fibromyalgia since July 2016. (Tr. 471, 712). In July 2016, she complained of back, shoulder, wrist, and hand pain that was worse in the morning and improved throughout the day. (Tr. 471). She also complained of poor sleep due to pain. (Tr. 471). Medication did not improve the level of pain. (Tr. 471). Upon examination, the medical provider found pain in the finger joints, hand pain, wrist joint pain, pain in the arms, and shoulder pain. (Tr. 473). In August 2016, the medical records show Bryant received some pain relief from a change in medication but continued to have neuropathic pain in her feet. (Tr. 464). Upon examination, the medical provider found severe muscle pain, arthralgias, and tingling in the limbs. (Tr. 466). In November and December 2016, Bryant presented with generalized, chronic multiple musculoskeletal pains, with the symptoms being constant and worsening. (Tr. 563, 672). She also reported muscle aches, arthralgias or joint pain, and back pain. (Tr. 672, 675). An examination showed generalized body and muscle pain, with joints, bones, and muscle tenderness and tender points throughout her spine with muscle spasms. (Tr. 672). Other

18

examinations show generalized body and muscle pain, but no back or joint pain. (Tr. 563, 600).

In February 2017, Bryant reported constant, diffuse pain at a level 3 out of 10 in her joints and muscles controlled by medication. (Tr. 669). Associated with the pain, were symptoms of fatigue, sleep disorders, morning stiffness, and muscle spasms. (Tr. 669). In April and May 2017, Bryant reported progressive worsening of fibromyalgia since her last visit. (Tr. 663, 666). She had diffuse pain especially in her feet and hands at a 7 out of 10 level, and pain in her joint and muscles. (Tr. 663, 666). Her associated symptoms were fatigue, sleep disorders, morning stiffness, and muscle spasms. (Tr. 663, 666). Even though she felt some relief from her medications, Bryant stopped taking them in May 2017 because of side effects. (Tr. 663-664). In August 2017, her muscle tone and strength were normal, she had a weak grip, and some numbness and tingling in both fingertips and pain in both wrists. (Tr. 658).

In January 2018, Bryant reported arthralgias or joint pain, but in February 2018, she reported no muscle aches, no muscle weakness, no muscle cramps, no arthralgias or joint pain, and no back pain. (Tr. 647, 690). In March 2018, Bryant complained of upper arm and hand pain. (Tr. 781). In April 2018, while Bryant had normal muscle tone and abnormal motor strength, she had limited range of motion and diffuse tenderness in all large joints, including hips, knees, and shoulders as well

as insomnia. (Tr. 760, 761). In July 2018, Bryant reported her pain was tolerable with medication, but complained of muscle aches and numbness. (Tr. 701). In September 2018, Bryant reported pain in her back and legs of a 7 or 8 level and shooting, burning pain, and tingling sensations in her extremities. (Tr. 770-771). Finally, in November 2019, Bryant reported no myalgia or arthralgia. (Tr. 712).

The Social Security Administration promulgated SSR 12-2p to provide guidance on how to determine whether a person has a medically determinable impairment of fibromyalgia and how it will evaluate this impairment in a disability claim. SSR 12-2p, 2012 WL 3104869 (July 25, 2012); *Francis v. Saul*, No. 8:18-cv-2492-SPF, 2020 WL 1227589, *3 (M.D. Fla. Mar. 13, 2020). The ruling informs ALJs in how to consider fibromyalgia in the five-step process. SSR 12-2p, 2012 WL 3104869 (July 25, 2012).

Focusing on the RFC, the ruling requires an ALJ to consider all relevant evidence in the case and all of a claimant's medically determinable impairments, including those that are not severe. SSR 12-2p at *6. "For a person with fibromyalgia, an ALJ must consider a longitudinal record whenever possible because the symptoms of [fibromyalgia] can wax and wane so that a person may have 'bad days and good days.'" *Id.* To determine if a person with fibromyalgia is capable of performing work other than her past relevant work, the ALJ must consider widespread pain and other symptoms associated with fibromyalgia such as fatigue

that may result in exertional and non-exertional limitations, which prevent a person from doing a full range of unskilled work. *Id.* If the objective medical evidence does not support a claimant's statements about the intensity, persistence, and functionally limiting effects of symptoms, then an ALJ must consider all evidence in the case record. This includes a claimant's daily activities, medications, or other treatments the person uses or used to alleviate symptoms, the nature and frequency of a claimant's attempt to obtain medical treatment for the symptoms, and statement by other people about the claimant's symptoms. *Id.* at *5.

Here, the ALJ briefly mentioned fibromyalgia and, in passing mentioned SSR 12-2p, but only during the step-two analysis. (Tr. 21). He also incorrectly found the treatment notes contained no evidence of myalgia or arthralgia symptoms. (Tr. 21). Indeed, Bryant complained of both myalgia and arthralgia in a number of treatment notes. (Tr. 466, 473, 647, 666, 669, 672, 675). And in determining the RFC, the ALJ did not follow SSR 12-2p's requirements.

Granted, an ALJ may hire a consultative examiner to determine if a claimant has a medically determinable impairment of fibromyalgia or is disabled. SSR 12-2p, 2012 WL 3104869, *4. "Because the symptoms and signs of [fibromyalgia] may vary in severity over time and may even be absent on some days, it is important that the medical source who conducts the CE [consultative examination] has access to longitudinal information about the person." *Id.* at *5. While the ALJ relied on

Gaeta's testimony, Gaeta never mentioned any specific medical records when he opined that normal musculoskeletal examinations and the absence of tender points were sufficient to find no limitations associated with fibromyalgia. (Tr. 21, 52). Furthermore, even in the absence of objective medical findings (*but see* Tr. 672, 760, 761 showing tender points upon examination), neither the ALJ nor Gaeta complied with the requirements of SSR 12-2p by considering Bryant's symptoms in the context of her daily activities, medications, or other treatments to alleviate the symptoms, the nature and frequency of her attempts to obtain medical treatment for symptoms, and statements by third parties about her symptoms.

Here, the ALJ's reliance on Gaeta's testimony for a step two determination does not adequately account for any possible limitations in the RFC for fibromyalgia and does not adequately consider SSR 12-2p's framework. The decision discounts Bryant's fibromyalgia and her statements regarding intensity, persistence, and the limiting effects of her symptoms, but does not follow SSR 12-2p's criterion for instances in which fibromyalgia might not be supported by objective medical evidence. *See Catalan v. Berryhill*, No. 8:17-cv-1425-T-30MAP, 2018 WL 4055340, *3-4 (M.D. Fla. Aug. 9, 2018), *report and recommendation adopted*, No. 8:17-cv-1425-T-30MAP, 2018 WL 4052276 (M.D. Fla. Aug. 24, 2018) (remanding where the ALJ did not evaluate fibromyalgia under SSR 12-2p's framework when discounting the plaintiff's statements regarding the intensity, persistence and

limiting effects of her symptoms); *Janeda v. Comm'r of Soc. Sec.*, No. 2:16-cv-803-MRM, 2018 WL 1282313, at *6 (M.D. Fla. Mar. 13, 2018) (remanding where the ALJ did not properly evaluate the plaintiff's fibromyalgia limitations under SSR 12-2p). The Court finds substantial evidence does not support the ALJ's decision regarding fibromyalgia and any attendant limitations caused by it.

### b.    Upper extremity impairments

Bryant argues that the ALJ erred in failing to include manipulative limitations in the RFCs for both DIB and SSI. (Doc. 25, p. 29). She claims that the record is replete with descriptions of shoulder, arm, wrist, and hand pain both before and after the date last insured. (Doc. 25, p. 29). She also claims that reaching and handling are activities required in almost all jobs and significant manipulative limitations may eliminate a large number of jobs, including the jobs listed by the ALJ. (Doc. 29, pp. 30-31).

The ALJ thoroughly considered the relevant medical records, testimony, and opinion evidence related to upper extremity impairments to reach the RFC finding for SSI. (Tr. 23-31); 20 C.F.R. § 416.945(a)(3). The ALJ noted Bryant's complaints regarding her upper extremities, including Bryant's testimony that she cannot work because of her inability to hold things with her hands. (Tr. 24, 25, 27, 28, 29, 30). While Bryant complained periodically of pain in the fingers, hands, wrist, arms, and shoulders (Tr. 434, 466-467, 451, 454, 471, 473, 651, 658, 770-771), many of the

objective findings showed no upper-extremity abnormality (Tr. 436, 456, 466-467, 564, 582, 601, 605, 621, 800, 805). Moreover, Bryant fails to cite any medical evidence supporting work-related functional limitations based on her subjective complaints. A claimant cannot prove disability by simply referencing subjective complaints. *Willyard v. Saul*, No. 8:19-cv-2537-TGW, 2020 WL 7074467, *4 (M.D. Fla. Dec. 3, 2020). Even a diagnosis is insufficient. *Id.* Instead, a claimant must show the effect of an impairment on her ability to work. *Id.* (citing *Wind v. Barnhart*, 133 F. App'x 684, 690 (11th Cir. 2005)). Symptoms are not significant unless they have associated functional limitations. *Id.* (citing 20 C.F.R. § 404.1529(a)).

Moreover, the ALJ relied on Gaeta's opinion, in which he found no upper-extremity limitations based on his review of the medical records. (Tr. 28, 30, 50-51). The ALJ also relied on Strong's opinion that did not include any upper extremity limitations and noted musculoskeletal exams were normal. (Tr. 100-101, 112-113). And the ALJ found medical evidence in the record consistent with these opinions, noting "no medical opinions from treating sources documented in the record that support the claimant's allegations." (Tr. 25-25, 29-30); 20 C.F.R. § 416.927(c)(4) ("Generally, the more consistent a medical opinion is with the record as a whole, the more weight we will give to that medical opinion.").

### c.   Obesity

In the joint memorandum, Bryant does not present separate arguments concerning obesity for DIB and SSI. Consequently, the analysis for obesity above applies equally to Bryant's SSI benefits and substantial evidence supports the ALJ's decision as to obesity.

### d.   Mental impairments

Bryant argues the ALJ erred in failing to properly consider mental impairments and include related limitations in the RFC and in the hypothetical posed to the vocational expert. (Doc. 25, p. 66). In support, Bryant cites to medical records from 2004 through 2017 showing medical providers assessed her with mental impairments. (Doc. 25, p. 66). Focusing on the relevant time period—June 2016 through the date of the decision—Bryant cites to diagnoses for depression, bipolar, insomnia due to stress, generalized anxiety disorder, and mixed anxiety and depressive disorder. (Tr. 436, 446, 494, 498, 648, 658, 664, 670, 672, 761). Bryant also cites several records that refer her to SalusCare for management of depression/bipolar ailments but does not cite to any records that show she received treatment from SalusCare. (Tr. 439, 446, 458).

The ALJ found depression and anxiety medically determinable impairments, considered them singly and in combination, and determined they do not cause more than minimal limitation in Bryant's ability to perform basic mental work activities

and are therefore non-severe. (Tr. 21). The ALJ relied on agency consultant, J. Patrick Peterson, Ph.D., J.D.'s opinion to support a non-severe finding. (Tr. 21, 97-99). The ALJ then considered the four broad areas of mental functioning to evaluate any mental disorders. (Tr. 21). For each of these areas, the ALJ considered medical records of examinations, Dr. Peterson's opinion, and Bryant's activities of daily living. (Tr. 21-22). After these considerations, the ALJ found mild limitations in all four functional areas. (Tr. 21-22).

While Bryant cites to medical records during the relevant time period that show diagnoses of mental impairments, she does not cite to records that establish any functional limitations caused by these diagnoses. A diagnosis of mental impairments without more is insufficient to establish that these conditions have functional limitations associated with them. *Trask v. Saul*, No. 8:20-cv-352-T-24SPF, 2021 WL 537177, *6 (M.D. Fla. Jan. 21, 2021), *report and recommendation adopted*, No. 8:20-cv-352-SCB-SPF, 2021 WL 535403 (M.D. Fla. Feb. 12, 2021) (citing *Moore v. Barnhart*, 405 F.3d 1208, 1213 n.6 (11th Cir. 2005)). Thus, the ALJ did not err in failing to include additional limitations in the RFC related to Bryant's depression, anxiety, bipolar disorder, or insomnia.

Lastly, Bryant argues the ALJ should have ordered a psychological consultative examination. (Doc. 25, p. 68). A claimant bears the burden of proving she is disabled and is responsible "for producing evidence in support of [her] claim."

*Ellison v. Barnhart*, 355 F.3d 1272, 1275 (11th Cir. 2003) (citing 20 C.F.R. § 416.912(a)). Nonetheless, an ALJ "has a basic duty to develop a full and fair record." *Id.* (citing 20 C.F.R. § 416.912(d)); *see* 20 C.F.R. § 416.945(a)(3) ("However, before we make a determination that you are not disabled, we are responsible for developing your complete medical history, including arranging for a consultative examination(s) if necessary, and making every reasonable effort to help you get medical reports from your own medical sources."). Generally, the duty to develop the record is required due to the inquisitorial nature of the administrative proceedings. *Washington v. Comm'r of Soc. Sec.*, 906 F.3d 1353, 1364 (11th Cir. 2018). A court will remand for further factual development of the record when the record contains evidentiary gaps that result in unfairness or clear prejudice. *Id.* (quoting *Henry*, 802 F.3d at 1267).

The regulations provide that if a claimant's "medical sources cannot give ... sufficient medical evidence about [an] impairment ... to determine whether [she is] disabled," the government may pay for a consultative medical examination or other medical testing. 20 C.F.R. § 416.917; *see* 20 C.F.R. § 416.919a. But, because the Social Security Act only requires substantial evidence to sustain an ALJ's findings, an ALJ need not obtain a consultative examination to determine "with absolute certainty" whether a claimant has a particular impairment. *Holladay v. Bowen*, 848 F.2d 1206, 1210 (11th Cir. 1988). In other words, an ALJ is not required to order a

consultative examination "as long as the record contains sufficient evidence for the [ALJ] to make an informed decision." *Ingram v. Comm'r of Soc. Sec.*, 496 F.3d 1253, 1269 (11th Cir. 2007).

Here, the record included substantial evidence to support the ALJ's decision regarding Bryant's mental impairments. (Tr. 21-23). The ALJ considered the medical records and found they supported only minimal limitations in Bryant's ability to perform basic mental work activities. Bryant failed to show that a psychological consultative examination was necessary for the ALJ to make an informed decision and also failed to show evidentiary gaps in the record that resulted in unfairness or clear prejudice. Thus, the ALJ did not err by not retaining a psychological consultative examination.

### C. Whether the ALJ erred in finding Bryant could perform medium and light work

Bryant asserts that the ALJ erred in finding her able to perform more than sedentary work both prior to and after her date last insured. (Doc. 25, p. 16). The ALJ found Bryant capable of performing medium work for DIB purposes and light work for SSI purposes. (Tr. 23, 27). Bryant argues generally that she suffers from peripheral neuropathy and idiopathic progressive neuropathy, osteoarthritis both before and after the date last insured, fibromyalgia, numbness and tingling in the extremities, back pain before and after the date last insured, leg pain, buckling knees, unsteadiness when walking, weakness in her legs and she uses a walker and a cane.

(Doc. 25, pp. 16-17). She also suffers from a serious cardiac condition before and after the date last insured. (Doc. 25, pp. 18-19). Based on all of these ailments, Bryant claims she is prevented from performing more than sedentary work.

As stated above, an individual's RFC is her ability to do physical and mental work activities on a sustained basis despite limitations secondary to her established impairments. *Delker v. Comm'r of Soc. Sec.*, 658 F. Supp. 2d 1340, 1364 (M.D. Fla. 2009). When determining a claimant's RFC, an ALJ must consider all relevant evidence including non-severe impairments. *Barrio v. Comm'r of Soc. Sec.*, 394 F. App'x 635, 637 (11th Cir. 2010). Because a Social Security disability adjudication is an inquisitorial proceeding, "ALJs do not simply act as umpires calling balls and strikes." *Washington v. Comm'r of Soc. Sec.*, 906 F.3d 1353, 1356 (11th Cir. 2018). "They are by law investigators of the facts and are tasked not only with the obligation to consider the reasons offered by both sides, but also with actively developing the record in the case." *Id*. At bottom, the task of determining a claimant's RFC and ability to work rests with the ALJ and not with a doctor. *Moore v. Comm'r of Soc. Sec.*, 649 F. App'x 941, 945 (11th Cir. 2016).

### 1.    DIB

The ALJ found Bryant capable of performing medium exertional work prior to the date last insured. (Tr. 23). For DIB, the ALJ considered all relevant evidence in assessing the RFC, including the objective medical findings, the medical source

opinions, Bryant's subjective complaints, treatment history, and daily activities. (Tr. 23-26). The ALJ acknowledged Bryant's subjective complaints, but found her symptoms were not entirely consistent with the medical evidence and other evidence of record. (Tr. 24). As stated above, in July 2013, Bryant completed a Pre-Employment Medical History Questionnaire, and listed mild high blood pressure as her only medical issue. (Tr. 418-422). And a subsequent medical examination showed Bryant was able to perform the essential functions of a correction officer. (Tr. 25, 411-412).

The ALJ cited a January 15, 2015 examination, which shows a generally normal examination, including normal musculoskeletal system, balance, motor strength, and gait and stance. (Tr. 25, 456). Her cardiovascular system was also generally normal. (Tr. 25, 455). At a February 2015 exam, Bryant complained of bilateral forearm, elbow and shoulder discomfort that had worsened over the last six months, but was relieved by elevating her arms over her head. (Tr. 25, 449). Elbows showed abnormalities and tenderness on palpation, and shoulders showed abnormalities with pain elicited by motion, but the shoulders showed a normal appearance. (Tr. 25, 451). Bryant failed to appear for an appointment on March 16, 2015 and did not return until June 2016, after the expiration of her insured status. (Tr. 25, 440, 448).

The ALJ thoroughly reviewed the sparse medical records from the relevant time period and considered Bryant's subjective complaints. (Tr. 24-26). The ALJ relied on Gaeta's opinion that the records prior to June 2015 did not show much in the form of abnormal examination findings that would support Bryant's allegations. (Tr. 24, 26). Gaeta found Bryant capable of medium work, but must avoid exposure to pulmonary irritants, noxious agents, and similar types of irritants. (Tr. 50). The ALJ also found Strong's opinion consistent in finding Bryant was capable of a substantially full range of medium-exertion work. (Tr. 25).

The ALJ considered all relevant evidence from the alleged onset date to the date last insured, including objective medical findings, medical source opinions, Bryant's subjective complaints, treatment history, and daily activities. (Tr. 23-26). Substantial evidence supports the ALJ's decision that prior to the date last insured for DIB, Bryant was capable of performing medium work except she must avoid exposure to dust, gases, odors, fumes, and poor ventilation.

### 2.   SSI

Because this matter should be remanded for reconsideration of fibromyalgia under the SSR 12-2p rubric, the ALJ should also consider fibromyalgia in combination with all relevant evidence of impairments, both severe and non-severe to reach an RFC determination. *See Barrio v. Comm'r of Soc. Sec.*, 394 F. App'x 635, 637 (11th Cir. 2010). As a result, the Court need not opine further on this issue.

**D.      Whether the ALJ erred in posing a hypothetical question to the vocational expert regarding environmental irritants**

The ALJ's RFCs for both DIB and SSI acknowledge that Bryant "'must avoid exposure to dust, gases, odors fumes and poor ventilation.'" (Doc. 25, pp. 50, 56-57 (quoting Tr. 23, 27)). Bryant argues the ALJ erred in the hypothetical question to the vocational expert by limiting her to "'*concentrated* exposure to dust, gas, fumes, odors, and poor ventilation.'" (Doc. 25, pp. 51, 57 (emphasis in original) (quoting Tr. 57).[8]

As Bryant asserts, in the hypothetical question posed to the vocational expert, the ALJ included a limitation that a person of similar age, education, and vocational background to Bryant "should avoid *concentrated* exposure to dust, gas, fumes, odors, and poor ventilation." (Tr. 57 (emphasis added)). The word "concentrated" was not in either RFC. Based on this hypothetical question, the vocational expert listed the job of corrections officer for DIB and the jobs of cashier, merchandise marker, and security guard for SSI. (Tr. 57, 58).

---

[8] In the first sentence of her argument about this issue, Bryant states: "The State agency found Plaintiff [ ] did not have the RFC to perform past relevant work (Tr. 102)." (Doc. 25, p. 50). Bryant failed to develop an argument regarding this statement. It is well settled in the Eleventh Circuit, "[i]ssues raised in a perfunctory manner, without supporting arguments and citation to authorities, are generally deemed to be waived." *Battle v. Comm'r, Soc. Sec. Admin.*, 787 F. App'x 686, 687 (11th Cir. 2019) (quoting *N.L.R.B. v. McClain of Ga., Inc.*, 138 F.3d 1418, 1422 (11th Cir. 1998)); *see, e.g.*, *Outlaw v. Barnhart*, 197 F. App'x 825, 828 n.3 (11th Cir. 2006) (holding claimant waived an issue because he did not elaborate on claim or provide citation to authority regarding claim). Thus, any issue associated with this statement is waived.

In the DOT, the job of corrections officer does not include any limitations for "atmospheric conditions" but has a limitation for "other environmental conditions" as frequently. DICOT 372.667-018, 1991 WL 673096. For the position of security guard, atmospheric conditions are not present, but other environmental conditions exist occasionally. DICOT 372.667-034, 1991 WL 673100. "Atmospheric conditions" are defined as: "[e]xposure to such conditions as fumes, noxious odors, dusts, mists, gases, and poor ventilation, that affect the respiratory system, eyes, or the skin." Appendix D. Environmental Conditions, SCODICOT Appendix D. Whereas "other environmental conditions" is defined as any other environmental condition not included in the definition of "atmospheric conditions". Appendix D. Environmental Conditions, SCODICOT Appendix D Appendix. Based on atmospheric conditions—which include exposure to dust, fumes, odors, and poor ventilation—not being present for corrections officers and security guard jobs, any error in including the word "concentrated" is harmless. *Valdez v. Comm'r of Soc. Sec.*, 808 F. App'x 1005, 1008 (11th Cir. 2020) ("[W]e apply harmless-error review to social security cases."). Thus, even if the ALJ erred in the hypothetical posed to the vocational expert, the error was harmless and the ALJ's decision that Bryant was capable of performing her past relevant work as a corrections officer for DIB and work as a security guard for SSI is supported by substantial evidence.

E.    **Whether substantial evidence supports the ALJ's finding that jobs exist in significant numbers in the national economy**

In the context of the number of jobs that exist in the national economy, Bryant argues the ALJ relied on estimates for the number of jobs that were not supported by substantial evidence. (Doc. 25, p. 58). Bryant claims that if the vocational expert's numbers were to be adopted, then the remaining job titles in each occupational group would have much lower job numbers.

For example, Bryant posits the vocational expert testified that there are 832,000 cashier jobs. (Doc. 25, p. 58; Tr. 58). For this occupational employment group, there are 18 job titles. (Doc. 25, p. 58). This group has 3,596,630 jobs, with 32% being full-time. (Doc. pp., 58-59). Thus, the full-time jobs are 1,150,922, and an average would be only 63,940 for each of the 18 job titles. (Doc. 25, p. 59). But the vocational expert testified that there were 832,000 cashier jobs leaving only 312,922 jobs for all of the other categories. (Doc. 25, p. 59). Bryant argues these same issues also apply to merchandise marker and security guard jobs. (Doc. 25, p. 59).

The vocational expert has a master's degree in rehabilitation counseling, is nationally certified, has worked for the state rehabilitation agency for 25 years, and has been doing Social Security work for about seven years in addition to private practice. (Tr. 55). At the hearing, the vocational expert testified that there were

832,000 cashier jobs, 270,000 merchandise marker jobs, and 264,000 security guard jobs. (Tr. 58).

"The ALJ must articulate specific jobs that the claimant is able to perform, and this finding must be supported by substantial evidence, not mere intuition or conjecture." *Webster v. Comm'r of Soc. Sec.*, 773 F. App'x 553, 555 (11th Cir. 2019) (citing *Wilson v. Barnhart*, 284 F.3d 1219, 1227 (11th Cir. 2002)). When a claimant cannot perform a full range of work at a certain exertional level, "the primary method for determining whether the claimant can perform other jobs is through the testimony of a VE [vocational expert]." *Id.* (citation omitted). If the Commissioner finds there are jobs in the national economy a claimant is able to perform, then the Commissioner must show these jobs exist in the national economy in significant numbers either in the region where the claimant lives or in several other regions in the country. *Id.* (citing 20 C.F.R. § 404.1566(a)). "The ALJ, relying on the VE's testimony, determines whether a specific number of jobs constitutes a significant number. . .. We have upheld an ALJ's finding that 174 small appliance repairman positions in the area in which the claimant resided, 1,600 general appliance repair jobs in Georgia, and 80,000 jobs nationwide established the existence of work in significant numbers." *Id.* (citing *Allen v. Bowen*, 816 F.2d 600, 602 (11th Cir. 1987)). Further, assuming no demand by a claimant for additional supporting job availability data, "a vocational expert's testimony may count as substantial evidence even when

unaccompanied by supporting data." *Biestek v. Berryhill*, 139 S. Ct. 1148, 1155 (2019).

The vocational expert was well qualified with many years of experience. While counsel questioned the vocational expert at the hearing, counsel did not inquire about how the vocational expert arrived at the job numbers. The vocational expert's testimony was uncontroverted. Thus, the ALJ could rely on the vocational expert's testimony as to job numbers. *Id.* Accordingly, substantial evidence supports the ALJ's decision regarding the number of jobs available in the national economy.

## III.   Conclusion

Upon consideration of the submissions of the parties and the administrative record, it is **RESPECTFULLY RECOMMENDED** the decision of the Commissioner denying disability insurance benefits be **AFFIRMED**, and the decision of the Commissioner denying supplemental security income be **REVERSED and REMANDED** for further consideration of fibromyalgia in combination with all other medical relevant medical records pursuant to sentence four of 42 U.S.C. § 405(g).

Reported in Fort Myers, Florida on July 29, 2021.

NICHOLAS P. MIZELL
UNITED STATES MAGISTRATE JUDGE

## NOTICE TO PARTIES

A party has fourteen days from this date to file written objections to the Report and Recommendation's factual findings and legal conclusions.   A party's failure to file written objections waives that party's right to challenge on appeal any unobjected-to factual finding or legal conclusion the district judge adopts from the Report and Recommendation.   *See* 11th Cir. R. 3-1. **To expedite resolution, parties may file a joint notice waiving the 14-day objection period.**